IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOLLY A. TENLEY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, Commissioner of )<br>Social Security, )<br>)<br>Defendant. )<br>) | Civil Action No.   11-282 |

AMBROSE, Senior District Judge

**OPINION
and
ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment.  (Docket Nos. 16 and 18).  Both parties have filed Briefs in Support of their Motions.  (Docket Nos. 17 and 19).  After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment (Docket No. 18) and denying Plaintiff's Motion for Summary Judgment.  (Docket No. 16).

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act.  On December 24, 2008, Plaintiff applied for DIB, and on January 6, 2009, she applied for SSI.  In both applications, she alleged that since September 23, 2008, she had been disabled due to chronic obstructive pulmonary disease, asthma, and post-traumatic stress

1

disorder. (R. 139-151, 178). Her last date insured was June 30, 2010. (R. 178). The state agency denied her claim initially, and she requested an administrative hearing. (R. 81-90). Administrative Law Judge ("ALJ") Brian P. Kilbane held a hearing on July 13, 2010, at which Plaintiff was represented by counsel. (R. 27-50). Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 42-50). In a decision dated August 26, 2010, the ALJ found that Plaintiff could perform past relevant work and, therefore, was not disabled under the Social Security Act. (R. 12-22) (finding Plaintiff not disabled at Step 4 of the sequential evaluation process).

On October 19, 2011, the Appeals Council granted Plaintiff's request for review, considered additional evidence submitted by Plaintiff and adopted most of the ALJ's findings. Although the Appeals Council disagreed that Plaintiff could perform her past work, it nevertheless found that Plaintiff could perform other jobs that exist in significant numbers in the national economy and, therefore, was not disabled at step 5 of the sequential evaluation process. (R. 1-7). On February 13, 2012, following submission of additional evidence, the Appeals Council found that no change in the prior action was warranted. Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 16 and 18). The issues are now ripe for my review.

## II.     LEGAL ANALYSIS

### A.     STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally,

the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment

(steps 1-4).  Dobrowolsky, 606 F.2d at 406.  Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5).  Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing.  Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.   WHETHER THE ALJ ERRED IN CONCLUDING THAT CLAIMANT DID NOT MEET A LISTING IN APPENDIX I, SUBPART P, REGULATION 4, SPECIFICALLY 12.00 (MENTAL IMPAIRMENTS)**

Plaintiff first takes issue with the ALJ's step three analysis.  In step three of the analysis set forth above, the ALJ must determine if the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1.  Jesurum v. Secretary of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995).  An applicant is *per se* disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary.  Burnett v. Commissioner, 220 F.3d 112, 119 (3d Cir. 2000).  The Third Circuit has held that:

> Putting the responsibility on the ALJ to identify the relevant listed impairment(s) is consistent with the nature of Social Security disability proceedings which are "inquisitorial rather than adversarial" and in which "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."

Burnett, 220 F.3d at 120, n.2 (quoting Sims v. Apfel, 530 U.S. 103 (2000)).

Plaintiff argues that her mental health impairments, including her generalized anxiety disorder and/or post-traumatic stress disorder meet and satisfy the requirements of Listing 12.04 (Affective Disorders) and/or 12.06 (Anxiety Related Disorders), 20 C.F.R. pt. 404, subpt. P, app.1 §§ 12.04, 12.06.  Plaintiff's arguments are unpersuasive.[1]

---

[1] In the heading to this section of her argument, Plaintiff also cites Listing 3.00 (Respiratory System) and 12.08 (Personality Disorders).  Plaintiff, however, does not discuss these listings in the body of her argument or otherwise provide support or explanation for such position.  Therefore, I do not discuss them

4

Affective Disorders under Listing 12.04 are characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  The required level of severity for these disorders is met when the requirements in both A and B of the Listing are satisfied, or when the requirements in part C of the Listing are satisfied.  Thus, to fall within the listed impairment of section 12.04 (Affective Disorders), a plaintiff must show:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
>> a. Anhedonia or pervasive loss of interest in almost all activities; or
>>
>> b. Appetite disturbance with change in weight; or
>>
>> c. Sleep disturbance; or
>>
>> d. Psychomotor agitation or retardation; or
>>
>> e. Decreased energy; or
>>
>> f. Feelings of guilt or worthlessness; or
>>
>> g. Difficulty concentrating or thinking; or
>>
>> h. Thoughts of suicide; or
>>
>> i. Hallucinations, delusions, or paranoid thinking; or
>
> 2. Manic syndrome characterized by at least three of the following:
>
>> a. Hyperactivity; or
>>
>> b. Pressure of speech; or
>>
>> c. Flight of ideas; or
>>
>> d. Inflated self-esteem; or
>>
>> e. Decreased need for sleep; or

---

here.

    f. Easy distractibility; or

    g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

    h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04.

    As to Anxiety-related Disorders under Listing 12.06, anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example,

confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied. Thus, to fall within the listed impairment of section 12.06 (Anxiety-Related Disorders), a claimant must show:

> A. Medically documented findings of at least one of the following:
>
> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>
> a. Motor tension; or
>
> b. Autonomic hyperactivity; or
>
> c. Apprehensive expectation; or
>
> d. Vigilance and scanning; or
>
> 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
>
> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
>
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
>
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
>
> AND
>
> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

> OR
>
> C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.06.

Plaintiff argues that "the records regarding the claimant's ongoing mental health treatment substantiate [Listing 12.04] at 12.04 A.1.a, c, e, f, g, and h; along with B 1, 2, 3, and 4." (Docket No. 17 at 7). She further argues that "the evidence and testimony substantiate the existence of 12.06 A, 3 and B 1, 2, 3, and 4; and C." Id. These arguments are without merit. Even assuming (as did the ALJ) that Plaintiff's mental impairments satisfy the "A" criteria of the listings, the ALJ concluded that those impairments do not satisfy the "B" criteria (which are identical in both listings). (R. 15-16). Specifically, the ALJ found that Plaintiff did not have marked limitations in any of the requisite areas. Rather, the evidence demonstrated only mild restriction in the activities of daily living and social functioning and moderate difficulties with regard to concentration, persistence or pace. The ALJ also found no evidence that Plaintiff had ever had an episode of decompensation of extended duration. Id.

Substantial record evidence supports the ALJ's careful analysis and findings in this regard. For example, with respect to activities of daily living, Plaintiff reported that she lives alone and that she has no problems with personal care, caring for her dogs, preparing meals, doing chores that do not require use of chemicals, driving a car, shopping, reading, watching television, using a computer, walking, running, paying bills, handling money, and spending time with others. (R. 202-209, 530). With respect to social functioning, Plaintiff reported, inter alia, spending time with others, playing games, going to dinner, and going to her mother's house. (R. 206-207). She also stated that she did not have any problems getting along with family, friends, neighbors, authority figures, or others. (R. 207-208). The evidence further indicated that

Plaintiff was in a relationship and planned to get married. (R. 572-574). Regarding concentration, persistence, and pace, Plaintiff complained of low concentration and motivation at times, but also reported that she generally had no problems with concentration, completing tasks, following instructions, understanding, or memory. (R. 207, 391). She stated that she could pay attention for "awhile," finish what she started, follow written instructions "okay," and follow spoken instructions "very well." (R. 207). Finally, Plaintiff has not pointed to any episodes of decompensaton of extended duration nor did I find evidence of any such episodes in the record.[2]

Although Plaintiff cites to case law holding that the ALJ cannot reject a treating physician's opinion in favor of his own contrary conclusions (Pl.'s Br. at 7-8), there is no evidence that the ALJ in this case erred in this regard. To the contrary, it is evident from the ALJ's opinion that he reviewed the medical records and appropriately concluded that there was no evidence that any treating physician had identified medical signs or findings that meet or medically equal the requirements of any section of the Listings at issue. (R. 15). The ALJ further explained that the state Disability Determination Service physicians who had reviewed the medical records had reached the same conclusion. Id. Again, Plaintiff has not pointed to any medical findings that contradict these findings or show that her mental impairments meet or equal either of the Listings at issue.

To the extent Plaintiff cites her diagnoses of post-traumatic stress disorder, depression, and generalized anxiety disorder as support for her argument, a mere diagnosis is not evidence of marked impairment sufficient to meet the listings. See, e.g., Neugebauer v. Astrue, Civ. A. No.

---

[2] The ALJ also analyzed whether Plaintiff met the "C" criteria as set forth in the listings and properly found that she did not. (R. 16). Plaintiff does not argue that she met the "C" criteria set forth in Listing 12.04 and does not cite any record evidence that would support a finding that she met the "C" criteria set forth in Listing 12.06, i.e., a complete inability to function independently outside the area of one's home. If anything, the record evidence set forth above demonstrates that Plaintiff was able to function independently and that her impairments far from approached this severe degree of limitation.

09-261J, 2011 WL 996801 (W.D. Pa. Mar. 17, 2011). As set forth above, the record evidence concerning Plaintiff's symptoms and abilities supports a contrary finding. Plaintiff's claims of nightmares, altered sleep patterns, and fear of suffering another fire likewise are insufficient to demonstrate the requisite marked limitations.[3]

For all of these reasons, I find the ALJ's conclusion that Plaintiff's impairments do not meet the criteria set forth in Listings 12.04 and 12.06 (R. 15-16) to be supported by substantial evidence in the record.[4]

B. **WHETHER THE ALJ ERRED IN CONCLUDING THAT CLAIMANT'S IMPAIRMENT OF POST CONCUSSIVE SYNDROME HEADACHES (MIGRAINES) WERE NON-SEVERE**

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process in determining that her post-concussive syndrome headaches (migraines) were a non-severe impairment. Pl.'s Br. at 8-10. This argument is without merit. The step-two inquiry into an impairment's severity Ais a *de minimis* screening device to dispose of groundless claims.@ Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). As set forth in 20 C.F.R. § 404.1521(a), an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs, including mental

---

[3] To the extent Plaintiff argues that the ALJ failed to address her GAF scores appropriately in his analysis (Docket No. 17 at 6-8), such argument is meritless. Contrary to Plaintiff's suggestion, the ALJ thoroughly considered and analyzed Plaintiff's GAF scores in accordance with the law. (R. 20-21). Moreover, even the single GAF score of 54 that Plaintiff cites in her brief (Docket No. 17 at 6) is indicative of moderate, not marked, limitations. See Russo v. Astrue, No. 2:11cv853, 2012 WL 3929807, at *1 n.1 (W.D. Pa. Sept. 7, 2012).

[4] Plaintiff also complains that the ALJ failed to give adequate consideration to the entirety of Plaintiff's mental health treatment notes and findings contained therein because he did not have two exhibits (B28F and B29F) that Plaintiff provided only to the Appeals Council. Pl.'s Br. at 8. This argument is unpersuasive. The Appeals Council reviewed, analyzed, and discussed these additional records and concluded that the records were consistent with the ALJ's findings. (R. 5-6).

activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b) see also 20 C.F.R. § 416.921(b). Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. Newell, 347 F.3d at 546; Mays v. Barnhart, 78 F. App'x 808, 811 (3d Cir. 2003); S.S.R. 85-28. Any doubt as to whether the step-two showing has been made must be resolved in favor of the claimant. Newell, 347 F.3d at 546-47.[5]

In this case, I agree with Defendant that the ALJ's finding that Plaintiff's migraines are not severe is supported by substantial record evidence. In his findings of fact and conclusions of law, the ALJ notes that while Plaintiff complained of headaches, the evidence showed that those headaches do not more than minimally affect her ability to perform basic work activities. Among other things, the ALJ notes that Plaintiff underwent a head CT in September 2009 that was stable with no acute intracranial findings and that she was seen for follow up and prescribed Imitrex in March 2010. (R. 14-15, citing Exs. B24F and B27F). Another head CT in April 2010 showed no intracranial pathology; normal enhancement of vascular structures; bony prominence in the right frontal convexity, likely due to an osteoma that was stable; and no interval change. (R. 15, citing Ex. B24F). A few days later, Plaintiff reported that Prozac helped her headache. (R. 15, citing Ex. B27F). Further, there is no evidence that any physician found that Plaintiff had any

---

[5] Although the Court of Appeals for the Third Circuit has commented that the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny, it also has made clear that it does not suggest that a reviewing court apply a more stringent standard of review in such cases. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Rather, "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." Id. at 360-61.

impairments or work limitations resulting from headaches.[6] The Appeals Council considered this argument on review and agreed with the ALJ's finding that Plaintiff's headaches were not severe. (R. 5).

For all of these reasons, the ALJ's finding that Plaintiff's post-concussive syndrome headaches were not severe is supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment on this issue is denied.

C. **WHETHER THE ALJ ERRED IN CONCLUDING THAT CLAIMANT HAS THE RESIDUAL FUNCTIONAL CAPACITY TO PERFORM WORK AT THE MEDIUM EXERTIONAL LEVEL**

Plaintiff argues that the ALJ erred in finding that she had the residual functional capacity to perform work at the medium exertional level and that she could perform her past relevant work as a salesperson and a certified nursing assistant. Pl.'s Br. at 10-11. This argument is moot. As Defendant correctly notes, the Appeals Council reviewed the ALJ's decision and corrected this alleged error, finding that Plaintiff's environmental restrictions precluded medium level jobs and that Plaintiff's certified nursing assistant job was semi-skilled and, therefore, inconsistent with the ability to perform only simple, routine, repetitive work. (R. 5).[7] As set forth in that decision, however, the Appeals Council found that Plaintiff was not disabled at step 5 of the sequential evaluation process because there were other jobs at the light exertional level that Plaintiff could perform that exist in significant numbers in the national economy. (R. 5-6). Specifically, the Appeals Council agreed with the ALJ that Plaintiff retained the capacity to perform simple, routine, repetitive tasks that involve simple, work-related decisions and relatively few workplace changes

---

[6] I also note that although the ALJ found Plaintiff's headaches to be non-severe, he did not end his analysis at Step 2 of the evaluation process. Rather, he considered all of Plaintiff's limitations in his later residual functional capacity determination. (R. 17).

[7] The Appeals Council found that Plaintiff's prior sales job was not substantial gainful activity. (R. 5).

but not in a fast-paced production environment.  (R. 5-6; R 16-17).  For the reasons set forth elsewhere herein, the Appeals Council's decision is supported by substantial evidence of record.

**D.    WHETHER THE ALJ ERRED BY FAILING TO GIVE APPROPRIATE WEIGHT TO THE CLAIMANT'S MENTAL HEALTH ISSUES AND POST-CONCUSSION SYNDROME**

Plaintiff argues that the ALJ's residual functional capacity determination failed to take into consideration the full gravity of her mental health impairments and her post-concussion syndrome and migraine headaches.  Pl.'s Br. at 10-11.  This argument is unpersuasive.  As set forth above, the ALJ concluded that Plaintiff's headaches were a non-severe impairment, and that decision is supported by substantial evidence of record.  Moreover, although Plaintiff's headaches were non-severe, the ALJ stated that he considered all of Plaintiff's supported symptoms in making his residual functional capacity determination.  (R. 17).

With respect to Plaintiff's mental health issues, although the ALJ did not find that Plaintiff's mental impairments met or equaled a listed impairment, he thoroughly discussed and considered her mental health symptoms and limitations in determining her residual functional capacity (R. 17-21).  After careful analysis of Plaintiff's testimony and the voluminous record evidence, the ALJ found that in addition to environmental restrictions related to her asthma, Plaintiff was limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions and in general, relatively few workplace changes. Id.

The ALJ's further determination that the record evidence did not support Plaintiff's claims that her limitations were even more severe is supported by substantial record evidence.  As the ALJ explained in his opinion, the medical evidence indicates that Plaintiff's mental health symptoms were relatively well-controlled with medication; Plaintiff had logical thought processes, euthymic mood, congruent and full range affect, and good insight and judgment; and that the only

panic or anxiety attack reported by Plaintiff was in October 2008.  (R. 19, citing medical evidence of record).   The ALJ also noted that the evidence did not refer to any severe or debilitating mental health problems or contain any restrictions recommended by Plaintiff's treating physicians.  (R. 19).

For all of these reasons, Plaintiff's argument that the ALJ failed to give appropriate weight to her post-concussion headaches and/or mental health impairments is without merit, and her motion for summary judgment on this issue is denied.

E.   **WHETHER THE ALJ ERRED IN FINDING THE CLAIMANT NOT DISABLED AS A RESULT OF THE CUMULATIVE EFFECT OF ALL OF HER SEVERE IMPAIRMENTS**

Plaintiff's final argument is that the ALJ failed to consider the combined effects of all of her severe impairments on her ability to perform substantial gainful activity. Pl.'s Br. at 11-12.   The record, however, fails to support that position. The ALJ specifically noted in his decision that he "considered all symptoms" in assessing plaintiff's residual functional capacity, and his findings demonstrate that he did just that. (R. 17). For the reasons previously discussed, I am satisfied that the ALJ took into consideration all of the medically supportable limitations arising from all of plaintiff's impairments, in combination, and that the ALJ's residual functional capacity assessment is supported by substantial evidence.   As thoroughly enumerated in the ALJ's opinion, such evidence includes, *inter alia*, Plaintiff's lack of complaints or treatment for asthma, the relative effectiveness of Plaintiff's medications, the lack of any restrictions by any treating physician, and Plaintiff's numerous reported daily activities.   See R. 17-21.

### III. CONCLUSION

In short, the ultimate finding of the ALJ and Appeals Council was Plaintiff retained the residual functional capacity to perform work at the light exertional level, except that she must avoid concentrated exposure to fumes, odors, dusts, gases, chemical irritants, environments with

poor ventilation, hot and cold temperature extremes, and extreme dampness and humidity. Plaintiff was further limited to simple, routine, repetitive tasks, not performed in a fast paced production environment, involving only simple, work-related decisions and in general, relatively few workplace changes. Contrary to Plaintiff's assertions, I find that these findings are supported by substantial evidence of record, including, <u>inter alia</u>, records from Plaintiff's treating health providers and Plaintiff's self-reported activities of daily living.  For these and all of the above reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.   An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOLLY A. TENLEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No.  11-282 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

AMBROSE, Senior District Judge

**ORDER OF COURT**

AND NOW, this 11th day of January, 2013, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment (Docket No. 16) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 18) is GRANTED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge